UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COY PHELPS,              )
                                  )
           Plaintiff,      )
      v.                )         CIVIL ACTION
                                    )         NO. 09-11218-JLT
LOCAL 0222, et al.,        )
                                  )
          Defendants.    )

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTIONS TO DISMISS

August 20, 2010

DEIN, U.S.M.J

## I.  INTRODUCTION

In 1986, plaintiff Coy Phelps ("Phelps") was found not guilty only by reason of insanity in the United States District Court for the Northern District of California on charges of possessing, manufacturing, and placing pipe bombs at five San Francisco locations, in violation of 26 U.S.C. § 5861(d) and (f), and 18 U.S.C. § 844(f) and (i). Phelps was civilly committed to the custody of the Attorney General following a hearing pursuant to 18 U.S.C. §§ 4243 and 4247, and is currently housed at the Federal Medical Center in Devens, Massachusetts ("FMC Devens").  See Phelps v. Sabol, No. 07-40147-GAO, 2008 WL 824258, at *1 (D. Mass. Mar. 27, 2008).

Phelps filed a complaint on July 16, 2009, purporting to set out thirteen causes of action relating to conditions and events which allegedly have transpired at FMC Devens.

The defendants include former and current employees of the Bureau of Prisons ("BOP"), along with the United States of America, the Bureau of Prisons, and the United States Attorney General (collectively the "BOP Defendants")[1]; Local 0222, American Federation of Government Employees, AFL-CIO, a labor organization that represents FMC Devens employees ("Local 0222"); and Advanced Technologies Group, Inc. (named in the complaint as ATJ Corporation (Trulinks/Trufone)), a corporation that entered into a contract with the BOP to provide telephone and electronic mail software and services ("ATG").  This is the latest in a series of cases brought by Phelps purporting to challenge his confinement.  See Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiff's Amended Complaint by Local 0222 (Docket No. 43) ("Local 0222 Mem.") at 5 (listing cases).

This matter is presently before the court on motions to dismiss filed by the BOP Defendants (Docket No. 56), Local 0222 (Docket No. 42) and ATG (Docket No. 45). For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that each of the motions to dismiss be ALLOWED.

---

[1]  The BOP Defendants include: (1) D. Scott Dodrill (formerly Northeast Regional Director of the Bureau of Prisons); (2) Ann Connor; (3) David Paul; (4) Luis Bonilla; (5) James Kennedy; (6) Howard Haas; (7) Carolyn Sabol (former FMC Devens Warden); (8) Michael Bollinger; (9) Yvonne Benet-Rivera; (10) the United States of America; (11) the Bureau of Prisons; (12) the U.S. Attorney General; (13) Luis Martinez; (14) James Laurie; (15) James Roberts; and (16) Disciplinary Hearing Officer Gerald Johnson.

## II.  **STATEMENT OF FACTS**

When ruling on a motion to dismiss, the court must accept as true all well-pleaded

facts, and give the plaintiff the benefit of all reasonable inference.  See Cooperman v.

Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  Where, as here, the plaintiff is

proceeding pro se, the court must construe his allegations liberally.  See Estelle v.

Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976) (a pro se

complaint, however inartfully pleaded, must be liberally construed).  Applying these

standards to the instant case, the relevant facts are as follows.

Plaintiff Coy Phelps is currently housed at FMC Devens, a Bureau of Prisons

Facility.  Complaint (Docket No. 1) ("Compl.") at 4.[2]  He introduces his claims as

follows:

> The plaintiff alleges the defendants conspired to maliciously cause
> him physical, mental, emotional, and spiritual loss, harm, injury,
> distress, pain, and suffering because of his sincerely held shared
> religious beliefs and in retaliation for the plaintiff exercising his
> constitutional statutory, and civil rights and that the defendants acted
> deliberately, willfully, and intentionally, and negligently, and
> maliciously to harass, oppress, and persecute him vindictively
> knowing that he is a unconvicted and unaccused civilly committed
> mental patient and not a convicted prisoner.
>
> The plaintiff alleges the defendants did not exercise professional
> judgment in the care and treatment of the plaintiff and that they,
> directly or tacitly, acted sadistically and wantonly with conscious
> and callous deliberate indifference and disregard for the rights of the
> plaintiff and for his well being and acted with a total disregard for
> the consequences for their negligence and acts, actions, inactions and

---

[2]  Since Phelps uses the same numbers for paragraphs in each count of the complaint, citations
will be to page numbers.

omissions.  The plaintiff alleges the supervisory staff failed to
properly and adequately screen applicants for employment and failed
to properly and adequately train and supervise subordinates and
failed to monitor, control, or correct misconduct of the defendants
and covered up the misconduct of subordinates and turned a blind
eye to massive and unlawful misconduct thereby establishing a
custom, policy and practice of widespread abuse, mistreatment, and
torture of the mentally ill, the mentally disabled, the insane, and the
vulnerable elderly, and the physically disabled.

Compl. at 7-8.  See also id. at 36 (Summary and Conclusion).

Phelps labels his complaint as a "Federal Tort Claim" and a "Bivens Action."  See

Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.

Ct. 1999, 29 L. Ed. 2d 619 (1971) (establishing that victims of a constitutional violation

by a federal agent have a right to recover damages against the official in federal court

despite the absence of any statute conferring such a right).  He has raised thirteen claims,

most of which contain a myriad of alleged causes of action.  Thus, the claims are entitled

as follows:

First Claim: Conspiracy to unlawfully search and seize plaintiff and
his property and restrain and confine him in inhumane and cruel
conditions of confinement in violation of the constitution, federal
laws, and BOP policy statements.

Claim # 2: Violation of 18 USC 4081 and 4247(a) (individualized
care and treatment), 42 USC 12101 (Disabilities Act), 29 USC 701
(Rehabilitation Act), 42 USC 1985 (Conspiracy), 2000bb (Religious
burden), 2000dd (inhumane treatment) Supreme Court decisions.

Claim # 3: Violation of 1st, 4th, 5th, 8th Amendment, BOP Policy
3420.09 (employee's conduct), retaliation, harassment, making false
and misleading reports, oppression, persecution

Claim # 4: Medical indifference, 8th Amendment violation, Supreme

-4-

Court law violations, violation of BOP Policy 3420.09

Claim # 5: Medical indifference – Retaliation – Violation of 8th Amendment, Americans with Disabilities Act (42 USC 12101 et seq) refusing to accommodate disability - medical incompetence - discrimination

Claim # 6: Discrimination - Retaliation - Abuse of Power - Unqualified employee denial of access to the court

Claim # 7: Conspiracy (42 USC 1985)

Claim # 8: Conspiracy - violation of 1st Amendment

Claim # 9: Conspiracy

Claim # 10: Retaliation – destruction of mail – 1st Amendment violation

Claim # 11: Denial of due process 5th - 6th Amendment

Claim # 12: Religious violation 1st Amendment 42 USC 2000bb and 2000cc

Claim # 13: Retaliation – harassment – conspiracy

Compl. at 17, 21, 23, 26, 27, 31, 32, 35 & next page (unnumbered).

Phelps' allegations are predominantly rambling narratives of unsatisfactory conditions and incidents of believed mistreatment. E.g., Compl. at 16-35. Phelps' complaints range from, but are not limited to: feces covered walls, overly loud noise from disgruntled inmates, conspiratorial punishments and false reports due to Phelps' undefined religious beliefs, assorted claims of medical indifference, denial of access to the legal library, and dissatisfaction with the current procedures for counting inmates. Id. at 19-20, 24-31, 36. Certain allegations identify individual employees, though most

simply refer to "unknown officers" or "defendants." See id. at 16-35.  Few, if any, details are given about when events allegedly occurred, or if any grievance procedures were followed.

Phelps is seeking attorney fees and costs, "five million tax free dollars in compensatory damages from each defendant and real defendant in interest to be paid in one lump sum within six months of judgment" and "twenty five million tax free dollars in punitive damages from each of the defendants and from each of the real defendants in interest to be paid in one lump sum within six months of judgment." Id. at 37.

### Local 0222 Union Involvement

Phelps specifies his allegations against Local 0222 in Claim # 7 of his complaint, entitled "Conspiracy (42 U.S.C. 1985)." Compl. at 32.  Local 0222 is a labor organization which represents FMC Devens employees. See id. at ¶ 1.  Phelps claims that Local 0222 operates both as a joint employer with and has substantial control over the BOP. Id. at ¶ 2; Compl. at 11, ¶ 27.  He believes that Local 0222 is acting to prevent the BOP from enforcing "its own rules even when the employees deliberately and maliciously cause harm and injury to the plaintiff," therefore condoning the "misconduct of BOP employees/their members." Compl. at 32, ¶¶ 4-5.  Specifically, Phelps claims that this involvement rises to such a level that Local 0222 acts "jointly with the [BOP] employees . . . to cause the plaintiff constitutional injury." Id. at ¶ 5.

## ATG Services at FMC Devens

Claim # 8, entitled "Conspiracy - Violation of 1st Amendment," is directed toward defendant ATG.  Compl. at 32-34.  ATG has contracted with the BOP to provide the Bureau's telephone and electronic mail software and services.  See Advanced Technologies Group, Inc.'s Motion to Dismiss (Docket No. 45) ("ATG Mot.") at 1.  Phelps identifies ATG as the "headquarters corporation" of TRULINCS email services and TRUFONE telephone services.[3]  Compl. at 32, ¶ 1.  He alleges that a computerized announcement informing recipients that the TRUFONE calls are from a federal prison, and warning instructions attached to TRULINCS emails are intimidating to recipients and chill his First Amendment rights.  E.g., id. at 33, ¶¶ 4, 10.  Furthermore, Phelps claims that this has caused him harm because certain companies have refused to accept his calls or seemingly disregarded his emails.  Id. at 33-34, ¶¶ 8-11.  He also objects to the fact that his emails cannot be sent without BOP first approving the receiving party.  Id. at 33, ¶¶ 7-9.  In addition, he complains that he has insufficient access to email and phone service.  Id. at 34, ¶¶ 16-19.

Additional factual details relevant to this court's analysis are described below.

### III.  ANALYSIS

### A.  Motion to Dismiss Standard of Review

---

[3]  Phelps incorrectly identifies ATG as ATJ and TRULINCS as TRULINKS in his complaint, but corrects the problem in his reply to the motions to dismiss.

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) test the sufficiency of the pleadings.  Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the non-moving party. Cooperman, 171 F.3d at 46.  Dismissal is only appropriate if the pleadings, so viewed, fail to support "'a plausible entitlement to relief.'"  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief.  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  "'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.'"  Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)) (internal citations omitted).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. (quoting Iqbal, 129 S. Ct. at 1950).  "This second principle recognizes that the court's assessment of the pleadings is 'context specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.'  '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is

-8-

entitled to relief.'" <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1950) (internal quotations and citation
omitted; alterations in original).

As detailed below, application of these standards requires that the complaint be
dismissed for failure to state a claim.  More fundamentally, however, the complaint
should be dismissed for failure to define the causes of action Phelps is purporting to
assert.

> **B.     Phelps Has Failed to Comply with Fed. R. Civ. P. 8(a)**

All of the defendants have moved to dismiss Phelps' claims for failure to comply
with Fed. R. Civ. P. 8(a).  Rule 8(a) provides in relevant part that "[a] pleading that states
a claim for relief must contain . . . a short and plain statement of the claim showing that
the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  The defendants contend
that dismissal is warranted because Phelps has failed to put them on notice of what,
specifically, they have done or failed to do, and because the complaint fails to "rise above
the level of a generalized gripe[.]"  <u>See</u> <u>Local 0222 Mem.</u> (Docket No. 43) at 11.
Additionally, the defendants complain of Phelps' "rambling accusations," "speculation"
and "multiple derivative claims."  <u>Memorandum in Support of Defendants' Motion to</u>
<u>Dismiss</u> (Docket No. 57) ("<u>BOP Defs. Mem.</u>") at 8.

The purpose of the notice pleading requirements set forth in Fed. R. Civ. P. 8(a) is
to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon
which it rests."  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512, 122 S. Ct. 992, 998,
152 L. Ed. 2d 1 (2002) (quotations and citations omitted).  This court recognizes that

"[w]hile a court may dismiss a pleading that does not comply with the notice pleading requirements of Rule 8, the exercise of this power is generally reserved for a pleading that is 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" Black v. UNUM Provident Corp., 245 F. Supp. 2d 194, 197 (D. Me. 2003) (quoting Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995)). Unfortunately, this is such a case.

While the "First Circuit holds a pro se litigant to a standard of pleading less stringent than that for lawyers," "this cannot be taken to mean that pro se complaints are held to no standard at all." Green v. Commonwealth of Mass., 108 F.R.D. 217, 218 (D. Mass. 1985). Phelps' complaint falls into the category of "[c]omplaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim[.]" Id. (quoting Prezzi v. Berzak, 57 F.R.D. 149, 151-52 (S.D.N.Y. 1972)). For example, but without limitation, Phelps includes numerous intertwined factual and legal theories, and at times ventures into the realm of the fantastic.[4] Phelps is not a newcomer to litigation. He has authored a number of complaints, many of which suffer from the same problem. See Phelps v. Mukasey,

---

[4] Phelps' complaint includes allegations such as "Dr. Ralph Spoda resigned and was replaced by a 3rd world lunatic who claimed to be the incarnate of God[.]" Compl. at 16. He also alleges that "The plaintiff had a friend (Robert Cochran) who was white. An unqualified BOP employee (such as defendant David Paul) assigned a black inmate (who hated white people) who thought he was a god and had casterated [sic] himself because gods do not have testicles, killed Robert while Robert was asleep because, he said, Robert was dreaming bad things about him." Id. at 17. He has also alleged that "Connor's behavior has changed so dramatically in 6 months …. Perhaps it is menopause. She is 40+ years old. But, because of her overreaction to racial issues perhaps she is having an extramarital affair with an African American staff or inmate." Id. at 24.

No. 08-40103-DPW, at Docket No. 43 (Memorandum and Order dated 9/29/09

dismissing complaint: "the plaintiff's diffuse, confused and confusing complaint fails to

make a plausible claim of constitutional violations by such individuals . . . .  Rather, to

the degree understandable, what is presented is a rambling recitation of disagreeable

incidents failing to set forth a legible claim of direct liability.").  His complaint fails to

comply with the requirements or goals of Fed. R. Civ. P. 8(a)(2) and should be dismissed.

See Green, 108 F.R.D. at 218.

### C.   The Bivens Claims Must Be Dismissed

Assuming, arguendo, that further analysis of the complaint is warranted, the

motions to dismiss should still be allowed on any number of grounds.  Without

attempting to dissect or interpret each of the disjointed counts of the voluminous

complaint, it is clear that Phelps has failed to state any claims based on his principal legal

theories.

Phelps has characterized his complaint as raising Bivens claims, and purports to

sue all the defendants in both their individual and official capacities for money damages.

See Compl. at 1, 2, 4, 37.  All of the Bivens claims should be dismissed.

In Bivens, the Supreme Court "recognized for the first time an implied private

action for damages against federal officers alleged to have violated a citizen's constitu-

tional rights."  Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66, 122 S. Ct. 515, 519, 151

L. Ed. 2d 456 (2001).  "The purpose of Bivens is to deter individual federal officers from

committing constitutional violations."  Id. at 70, 122 S. Ct. at 521.  Thus, if an inmate "in

a BOP facility alleges a constitutional deprivation, he may bring a <u>Bivens</u> claim against

the offending individual officer, subject to the defense of qualified immunity.  The

prisoner may not bring a <u>Bivens</u> claim against the officer's employer, the United States,

or the BOP."  <u>Id.</u> at 72, 122 S. Ct. at 522.  Moreover, a <u>Bivens</u> action will not lie against

federal officials sued in their official capacities.  <u>Ruiz-Rivera v. Riley</u>, 209 F.3d 24, 28

(1st Cir. 2000).  Thus, any <u>Bivens</u> claims against the individual BOP defendants in their

official capacity, as well as the claims against the United States, the Attorney General and

the BOP, must be dismissed.

Similarly <u>Bivens</u> liability does not extend to private corporations or entities

operating under contract with the Bureau of Prisons.  <u>Malesko</u>, 534 U.S. at 66, 122 S. Ct.

at 519.  Since "a <u>Bivens</u> claim is simply not available against a private entity even if that

entity is acting under color of federal law[,]" all <u>Bivens</u> claims against Local 0222 and

ATG must be dismissed.  <u>Meuse v. Pane</u>, 322 F. Supp. 2d 36, 38 (D. Mass. 2004).

Finally, as noted above, <u>Bivens</u> claims against individual defendants are subject to

the defense of qualified immunity.  As the United States Supreme Court recently

explained:

> The doctrine of qualified immunity protects government officials
> from liability for civil damages insofar as their conduct does not
> violate clearly established statutory or constitutional rights of which
> a reasonable person would have known.  Qualified immunity
> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified
> immunity applies regardless of whether the government official's

> error is a "mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."
>
> Because qualified immunity is an immunity from suit rather than a mere defense to liability it is effectively lost if a case is erroneously permitted to go to trial.  Indeed, we have made clear that the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery.  Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.

Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (internal punctuation, citations and quotations omitted).

In this case, the individual defendants "are entitled to qualified immunity unless (1) the facts alleged show the defendants' conduct violated a constitutional right, and (2) the contours of this right are "clearly established" under then-existing law so that a reasonable officer would have known that his conduct was unlawful."  Santana v. Calderon, 342 F.3d 18, 23 (1st Cir. 2003), and cases cited.  Thus, to determine the issue of qualified immunity the court must "determine (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutionally protected right; and (2) if so, whether that right was 'clearly established' at the time of the defendant's alleged violation."  Martinez-Rodriguez v. Guevara, 597 F.3d 414, 419 n.2 (1st Cir. 2010) (internal punctuation and quotations omitted).  "A right is 'clearly established' if, at the time of the alleged violation, the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Giragosian v. Bettencourt, __ F.3d __, No. 09-2001, 2010 WL 2951190, at *2 (1st Cir.

July 29, 2010) (internal punctuation and quotations omitted).  Because there is no

vicarious liability in a <u>Bivens</u> or other constitutional challenge, "a plaintiff must plead

that each Government-official defendant, through the official's own individual actions,

has violated the Constitution."  <u>Iqbal</u>, 129 S. Ct. at 1948.

A determination of qualified immunity can be made in connection with a motion to

dismiss.  <u>Giragosian</u>, 2010 WL 2951190, at *2; <u>Garcia-Rubiera v. Calderon</u>, 570 F.3d

443, 459-60 (1st Cir. 2009).  "[B]are assertions" that "amount to nothing more than a

formulaic recitation of the elements of a constitutional discrimination claim" are

insufficient to state a claim of a constitutional violation, and do not defeat a claim of

qualified immunity.  <u>Iqbal</u>, 129 S. Ct. at 1951, 1954.  Here, Phelps has failed to identify

the defendant who allegedly engaged in the wrongful conduct, failed to identify the

contours of the constitutional rights at issue, and failed to plead facts to establish that any

of the defendants would have known that his or her conduct was unlawful.  Under such

circumstances, the defendants are entitled to qualified immunity.[5]  Therefore, all of the

<u>Bivens</u> claims should be dismissed.

### D.    <u>Conspiracy Claims</u>

Assuming, <u>arguendo</u>, that the complaint survives the defendants' challenge

pursuant to Fed. R. Civ. P. 8(a)(2), Phelps' complaint still fails to state a claim.  Thus,

many of the claims raised by Phelps purport to state a conspiracy claim either under 42

---

[5]  In light of this conclusion, this court will not address the defendants' contention that the
defendants Sabol, Dodrill and Haas were not properly served in their individual capacities.

U.S.C. § 1985 or common law.  See Compl. Claim #2 & #7 (vs. Local 0222), #8 (vs.

ATG), #9 & #13.  The allegations are insufficient to state a claim for conspiracy.

> [A] claim under § 1985(3) must contain four elements.  First, the
> plaintiff must allege a conspiracy; second, he must allege a conspira-
> torial purpose to deprive the plaintiff of the equal protection of the
> laws; third, he must identify an overt act in furtherance of the
> conspiracy and finally, he must show either injury to person or
> property, or a deprivation of a constitutionally protected right.
> Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).
> ....
> [With respect to the second requirement] [i]t has long been
> established that a claim under § 1985(3) requires "some racial, or
> perhaps otherwise class-based, invidiously discriminatory animus
> behind the conspirators' action."  Griffin v. Breckenridge, 403 U.S.
> 88, 102, 91 S.Ct. 1790, 29 L. Ed. 2d 338 (1971).

Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008).  Phelps has failed

to allege sufficient facts, as opposed to conclusions, to satisfy these elements.

As an initial matter, Phelps does not identify membership in any class protected by

section 1985.  Scattered throughout the complaint are allegations that he is being

conspired against because of his politically incorrect "sincerely held shared religious

beliefs," and defendants' animosity towards or dislike of these beliefs.  See, e.g., Compl.

at 7, 14, 23, 24, 25, 31.  Nowhere, however, does he identify the religious beliefs to

which he is referring.  Absent allegations sufficient to establish membership in a

protected class, Phelps' conspiracy claim must fail.

Similarly, Phelps has not alleged facts to support his conclusory contention that a

conspiracy existed.  See Rogers v. Mount Union Borough by Zook, 816 F. Supp. 308,

314 (M.D. Pa. 1993) ("Mere conclusory allegations that a conspiracy existed will not

survive a motion to dismiss.").  "An illicit agreement is the essence of a conspiracy and

without proof of such, there can be no viable cause of action."  <u>Horne v. City of Boston</u>,

509 F. Supp. 2d 97, 112 (D. Mass. 2007).  This is true under § 1985 as well as under a

claim for civil conspiracy.  <u>See</u> <u>Smith v. Jenkins</u>, 626 F. Supp. 2d 155, 173 (D. Mass.

2009) (to establish a civil conspiracy, plaintiff must allege "a common design or

agreement, although not necessarily express, between two or more persons to do a

wrongful act").  Since he has not identified the existence of an agreement, Phelps'

conspiracy claims should be dismissed.

> ### E.      <u>The Remaining Claims Are Insufficient</u>

As noted above, Phelps has listed a number of legal theories throughout his

complaint.  They have been reviewed by this court.  Without belaboring the point, the

complaint fails to allege facts which support the elements of each of the legal claims.

<u>See</u>, <u>e.g.</u>, <u>BOP Defs. Mem.</u> (Docket No. 57) at 11-13.  Moreover, he has failed to identify

the individuals who engaged in the behavior he is challenging, or, in many cases, any

harm that he suffered.  This lack of well-pleaded factual allegations mandates that the

complaint be dismissed.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1950.

> ### F.      <u>Collateral Estoppel</u>

Finally, the BOP Defendants contend that the complaint should be dismissed on

the basis of collateral estoppel, because Phelps has already litigated (and lost), his

principle claim that his confinement as a civil commitment under 18 U.S.C. § 4243 in a

BOP facility is unconstitutional.  See BOP Mem. (Docket No. 57) at 3 n.4 (citing cases).

While this court agrees that the re-litigation of certain issues is barred by collateral

estoppel, given the diffuse allegations in the complaint, the scope of a collateral estoppel

bar cannot be determined without much greater analysis than presented by the parties in

the pleadings before this court.  Therefore, this court does not recommend the dismissal

of the entire complaint based on the collateral estoppel argument.

> For collateral estoppel to apply, the following situation must exist:

> > (1) an identity of issues (that is, that the issue sought to be precluded
> > is the same as that which was involved in the prior proceeding),
> > (2) actuality of litigation (that is, that the point was actually litigated
> > in the earlier proceeding), (3) finality of the earlier resolution (that
> > is, that the issue was determined by a valid and binding final
> > judgment or order), and (4) the centrality of the adjudication (that is,
> > that the determination of the issue in the prior proceeding was
> > essential to the final judgment or order).

Gonzalez-Pina v. Rodriguez, 407 F.3d 425, 430 (1st Cir. 2005) (quotation and citation

omitted).  Moreover, "the traditional requirement of mutuality has been eliminated to

permit a defendant to invoke estoppel against a plaintiff who lost on the same issue to an

earlier defendant[.]"  Lynch v. Merrell-Nat'l Labs., 830 F.2d 1190, 1192 (1st Cir. 1987).

In Phelps' situation, it has already been determined that 18 U.S.C. § 4243, pursuant to

which Phelps is committed, is not unconstitutionally vague or overbroad.  Phelps v.

United States, 831 F.2d 897 (9th Cir. 1987).  A federal medical center has been

determined to be a "suitable facility" for Phelps within the meaning of 18 U.S.C. §§ 4243

and 4247, and his contention that his indefinite commitment is illegal has been found to

be "without merit."  <u>Phelps v. U.S. Bureau of Prisons</u>, 62 F.3d 1020, 1023 (8th Cir.

1995).  Thus, Phelps cannot relitigate his fundamental claim that the federal government

and the BOP have no authority to hold him as a civilly committed mental patient, a theme

that runs throughout his complaint.  <u>See</u>, <u>e.g.</u>, <u>Compl.</u> at 9.  Whether additional claims

raised in the complaint are barred by the doctrine of collateral estoppel will have be

explored further on a more developed record if the complaint is not dismissed.

### IV.  <u>CONCLUSION</u>

For all of the reasons detailed above, this court recommends to the District Judge

to whom this case is assigned that the BOP "Defendants' Motion to Dismiss" (Docket

No. 56), the "Motion to Dismiss Plaintiff's Amended Complaint by Local 0222" (Docket

No. 42), and "Advanced Technologies Group, Inc.'s Motion to Dismiss" (Docket No. 45)

be ALLOWED.

   / s / Judith Gail Dein            
Judith Gail Dein
U.S. Magistrate Judge
